IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CORNELIUS WILLIAMS, JR., AIS # 230476, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CASE NO. 2:25-CV-298-WKW [WO] |
| J. PRYOR, *et al.*, | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

On April 17, 2025, Plaintiff Cornelius Williams, Jr., an inmate in the custody of the Alabama Department of Corrections (ADOC), filed this *pro se* complaint under 42 U.S.C. § 1983 against five ADOC correctional officers.[1] (Doc. # 1.) The complaint is pending on the motion to dismiss filed by the ADOC correctional officers: John Pryor; Jimmie Brayboy, Jr.; Reginald Kincey; George Jones; and Shannon Spann (collectively, "ADOC Defendants"). (Doc. # 16.) Plaintiff filed a response in opposition to the motion, and the ADOC Defendants replied. (Docs. # 19, 21.) The ADOC Defendants have presented multiple arguments for dismissal, but one is decisive: This action must be dismissed due to Plaintiff's failure to

---

[1] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). Absent evidence to the contrary, the court must "assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014). Plaintiff dated his § 1983 complaint "4/17/2025." (Doc. # 1 at 4.)

exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.[2]

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1331.[3] Personal jurisdiction and venue are not contested.

## II. THE COMPLAINT'S ALLEGATIONS

The complaint, liberally construed, alleges the following regarding an incident at Easterling Correctional Facility on March 13, 2025.[4] *See Bilal v. Geo Care, LLC*,

---

[2] Plaintiff also has identified "Jane Doe (Cube Operator)" and "12 inmates (John Does)" as Defendants. (Doc. # 1 at 2.) However, federal courts do not generally allow fictitious-party pleading. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The allegations in the complaint do not justify an exception to this general rule. *See Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (per curiam). Therefore, the unnamed Doe individuals are not parties to this action. Even if they were, the claims against these fictitious parties would be dismissed for the same reasons set forth in this Memorandum Opinion and Order.

[3] The ADOC Defendants contend that Plaintiff lacks Article III standing to sue one of the named ADOC Defendants, Jimmie Brayboy, Jr., because there are no allegations establishing causation. (Doc. # 16 at 6.) Challenges to Article III standing implicate the court's subject matter jurisdiction. Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, such challenges can be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). The ADOC Defendants' challenge is facial. To satisfy the causation requirement of Article III standing, a plaintiff must show that his injury is "fairly traceable" to the defendant's challenged conduct, but he does not have to show proximate causation. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019). At the "pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" because it is presumed on a motion to dismiss that "general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 1124 (citation and internal quotation marks omitted). While there are no allegations against Defendant Brayboy to determine if Plaintiff's injuries are fairly traceable to him, if this action were proceeding, the court would have permitted Plaintiff an opportunity to replead his claims against Defendant Brayboy prior to ruling on the ADOC Defendants' standing argument.

[4] When Plaintiff filed this lawsuit, he was no longer incarcerated at Easterling Correctional Facility but was in custody at the ADOC's Kilby Correctional Facility. (Doc. # 1 at 2.)

981 F.3d 903, 911 (11th Cir. 2020) (holding that *pro se* pleadings are liberally construed and held to "less stringent standards" than pleadings drafted by attorneys). On that date, the named ADOC Defendants allegedly used excessive force against him while he was "trying to defend himself" against an attack by approximately twelve other prisoners. (Doc. # 1 at 2.) The attack was the result of a "hit to murder Plaintiff." (Doc. # 1 at 3.) Plaintiff alleges that he was subject to excessive force, which he contends violates the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. # 1 at 2–3.)

During the incident, Defendant John Pryor sprayed Plaintiff with a chemical agent. Subsequently, while handcuffed, Plaintiff was taken into a room by three officers and beaten with nightsticks. (Doc. # 1 at 3.) The complaint identifies "Officers Kincey, Jones and Spann," as well as "Captain Pryor," as the individuals who beat him. (Doc. # 1 at 3.) The complaint does not specify any acts by Officer Brayboy, Jr.

As a result of the incident, Plaintiff sustained injuries to his "body and eye[s]" and was denied medical treatment for his eyes. (Doc. # 1 at 3.) For relief, Plaintiff seeks the termination of the named Defendants from the ADOC, monetary damages for the Eighth Amendment violations, the initiation of charges for first-degree assault and attempted murder against certain Defendants, and a transfer to a different segregation unit. (Doc. # 1 at 4.)

## III.  DISCUSSION

Responding to the complaint, the ADOC Defendants filed a motion to dismiss, raising the affirmative defense of failure to exhaust administrative remedies as required by the PLRA.  The PLRA "requires prisoners to exhaust all available administrative remedies before suing in a district court." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1313–14 (11th Cir. 2025); *see* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Its purpose is to provide "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

### A.  The Two-Step Process Under the PLRA for Deciding a Motion to Dismiss for Failure to Exhaust Administrative Remedies

Exhaustion under the PLRA is a "standard affirmative defense" and is neither jurisdictional nor a pleading requirement. *Perttu v. Richards*, 605 U.S. 460, 469 (2025).  However, "exhaustion is mandatory under the PLRA, and unexhausted

claims cannot be brought in court." *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing *Jones v. Brock*, 549 U.S. 199, 211 (2007)).

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit "established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust." *Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing *Turner*, 541 F.3d at 1082); *accord McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025). In the first step, "district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true." *Whatley*, 802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082). If the factual allegations, viewed in that light, show that the prisoner failed to exhaust available administrative remedies, the district court must dismiss the complaint. *See McGuire-Mollica*, 146 F.4th at 1314 (citing *Turner*, 541 F.3d at 1082). If dismissal is not warranted at the first step on the prisoner's view of the facts, the process moves to the second step, where the district court "makes specific findings to resolve disputes of fact" concerning exhaustion.[5] *See Whatley*, 802 F.3d at 1209 (citing *Turner*, 541 F.3d at 1082–83). The district court "then decides whether under those findings the

---

[5] No party has argued that the *Perttu* Court's pronouncement—"that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment," 605 U.S. at 479—which relates to *Turner*'s second step, is relevant here.

5

prisoner has exhausted his available administrative remedies." *Turner*, 541 F.3d at 1083. Throughout this two-step process, the burden is on the defendant to prove that the plaintiff has not exhausted his "available administrative remedies." *McGuire-Mollica*, 146 F.4th at 1314 (quoting *Turner*, 541 F.3d at 1082).

B. **"Proper" Exhaustion**

The United States Supreme Court has held that the "[PLRA's exhaustion] provision 'requires proper exhaustion' of available prison grievance procedures, meaning a prisoner 'must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court.'" *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006)). "Proper" exhaustion means *all* the administrative steps are followed, including an appeal. *See Allen v. Blakely*, 814 F. App'x 522, 525 (11th Cir. 2020) (per curiam) (quoting *Woodford*, 548 U.S. at 85). Determining the "boundaries of proper exhaustion" is done by examining "the requirements of the applicable prison grievance system." *McGuire-Mollica*, 146 F.4th at 1314 (citation and internal quotation marks omitted); *see also Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015) ("Although federal law sets the exhaustion requirement, state law determines what steps are required to exhaust.").

**C.    The ADOC's Inmate Grievance Policy**

ADOC prisoners, like Plaintiff, are subject to the ADOC's Administrative Regulation Number 406 (AR 406), which established an inmate grievance policy, effective August 1, 2023.  (Doc. # 16-1.)  Under AR 406, copies of the policy and necessary forms, such as the inmate grievance form and grievance appeal form, must be readily accessible in each housing unit and law library.  AR 406 § V.A.  Grievance boxes, which must be locked, are required to be placed in areas accessible by all inmates.  AR 406 § V.A.1.

Grievances generally must be submitted within ten days of the incident.  AR 406 § V.G.  However, § V.G. imposes no time limit for incidents involving "an allegation of sexual abuse or sexual harassment," and § V.Z.1.a exempts "an allegation of sexual abuse, sexual harassment, or any verbal or physical abuse or harassment" from the ten-day time limit.

For non-emergency grievances, the process starts when an inmate submits a completed Inmate Grievance Form 406-A.  AR 406 § V.Z.1.a.  The grievance form must be submitted, either manually or electronically (as available), to the institutional grievance officer (IGO).  AR 406 § V.Z.1.a; *see also* § III.K (defining "grievance").  Submission of the inmate grievance form in the "secure inmate drop-box" satisfies the requirement of delivery to the IGO.  AR 406 § V.Z.1.b.  The IGO collects all grievance forms, assigns each grievance a number, and maintains an

institutional grievance log. AR 406 §§ IV.C; § V.Z.1.a–.b. The IGO then forwards the grievance to the appropriate supervisor or staff for investigation. AR 406 § V.Z.1.b. But if the grievance relates to conduct of any staff or supervisor, the IGO forwards the grievance as a "staff complaint" to the warden or his or her designee for review and investigation. AR 406 § V.Z.1.c. Additionally, any staff complaint alleging physical or sexual abuse is also sent to the Law Enforcement Services Division (LESD). AR 406 § V.Z.1.c. The IGO must provide a response to the inmate-grievant within ten days of receiving the grievance. AR 406 § V.Z.1.d. If the inmate disagrees with the decision, he must submit a written grievance appeal form to the IGO within ten days of receiving the decision. Failure to appeal is considered acceptance of the decision. AR 406 § V.Z.1.e.

Appeals are reviewed by the departmental guidance coordinator (DGC), who must issue a final decision on the grievance's merits, remedies, and requests within 60 business days of receiving the appeal. This decision, which is final and not subject to further challenge, must confirm that the inmate has exhausted all available administrative remedies. AR 406 §§ V.Z.2.a.–b.

If the inmate marks the grievance as an emergency, the IGO will receive a determination from the warden whether it qualifies as such.[6] AR 406 § V.AA.1. If

---

[6] The AR 406 policy defines an emergency grievance as follows: "A grievance concerning matters which may necessitate a response outside regular policy time limits, including, but not limited to, issues alleging a substantial risk of imminent sexual or physical abuse." AR 406 § III.H.

it does, the warden must promptly address and document the emergency and the actions taken. AR 406 § V.AA.1; § IV.B.5. There are some exceptions regarding which official must resolve the emergency grievance. For example, "[a]ny grievance alleging physical or sexual abuse of an inmate by staff shall be directed to the LESD for resolution." AR 406 § V.AA.1. Additionally, "[f]or . . . allegations of verbal, physical, or sexual abuse by staff, the Warden/Designee shall take action as appropriate." AR 406 § V.AA.1.

If the inmate disagrees with the actions taken, he must submit his appeal within 24 hours of the decision. The DGC then must decide the appeal within 72 hours. AR 406 §§ V.AA.3.–4.; *see also* § IV.A.2 (denoting as a DGC responsibility "[r]eviewing appeals from inmates that reach Step 2 (Appeal)"). Unless there is a showing of good cause, failing to appeal on time is considered either abandoning the emergency grievance or accepting the decision and responsive action. AR 406 § V.AA.3.

D.  **Analysis of Proper Exhaustion Under the Two-Step Process**

The ADOC Defendants move to dismiss the complaint on multiple grounds, including failure to exhaust available administrative remedies, and invoke the *Turner* two-step process. (Doc. # 16 at 3–5 (citing *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008).) They support their motion with a copy of the AR 406 policy, which has been in place since August 1, 2023, and an affidavit from the DGC, who

9

is "the custodian of records for Inmate Grievances at ADOC." (Doc. # 16-2 at 1; Doc. # 16-1.) The DGC attests that, based upon her review of those records, Plaintiff "has not submitted an inmate grievance for the incident he alleges occurred on March 13, 2025, at Easterling Correctional Facility." (Doc. # 16-2 at 1.) The ADOC Defendants argue that they have met their burden by showing that an inmate grievance policy was in effect when the incident occurred and that Plaintiff was required to adhere to this policy by submitting a grievance concerning that incident. They further contend that, because the DGC confirmed that Plaintiff did not file a grievance, he failed to exhaust his available administrative remedies. Therefore, the complaint must be dismissed. Thereafter, an Order was entered, requiring Plaintiff to "show cause why his claims should not be dismissed for the reasons proffered by the [ADOC] Defendants." (Doc. # 18.)

In response to the ADOC Defendants' motion raising failure to exhaust administrative remedies, Plaintiff

> asserts furthermore that the Defendants['] motion to dismiss his complaint must fail because he did in fact exhaust the administrative remedies under the Prison Litigation Reform Act whereas he contacted I&I (Internal Investigations for the Alabama Department of Corrections[)]. [Plaintiff] filed his complaint with a Mr. R. White. Thus, this court does have jurisdiction.

(Doc. # 19 at 3.)

In their reply, the ADOC Defendants clarify that I&I—the Investigations and Intelligence Division—has been redesignated as the Law Enforcement Services

10

Division (LESD). They further explain that the LESD "conducts criminal investigations and investigates reported use of force by employees against inmates." (Doc. # 21 at 3.) The ADOC Defendants assert that neither contacting the LESD nor filing this lawsuit is a substitute under the AR 406 policy for submitting an inmate grievance form regarding the March 13, 2025 event. Thus, they assert that Plaintiff's contentions, taken as true, do not conflict with their showing that the AR 406 policy provided the mechanism for Plaintiff to exhaust his administrative remedies and that the ADOC's records do not contain a grievance form submitted by Plaintiff concerning the March 13, 2025 incident. (Doc. # 21 at 3.)

Under the first step of *Turner*'s two-step framework, and assuming the truth of Plaintiff's allegations in his response, the court finds that the ADOC Defendants have shown Plaintiff's failure to exhaust available administrative remedies. The ADOC Defendants' motion establishes the existence of a formal grievance process (the AR 406 policy) requiring ADOC inmates to submit an Inmate Grievance Form 406-A to the IGO and pursue all prescribed levels of review before filing a lawsuit. (*See* Docs. # 16-1, 16-2; Doc. # 16 at 5.) The AR 406 policy further indicates forms and procedures were available to ADOC inmates, and Plaintiff makes no contrary assertions as to the policy's availability. The DGC's affidavit confirms that a search of the ADOC's grievance records reveals that Plaintiff did not submit a grievance form regarding the March 13, 2025 incident, as required by the AR 406 policy.

11

Plaintiff's factual allegations, taken as true, do not contradict the factual allegations established by the ADOC Defendants' motion to dismiss. First, Plaintiff asserts that he exhausted his administrative remedies because he contacted I&I (now the LESD). (Doc. # 19 at 3.) Contacting I&I (now the LESD) indisputably does not demonstrate proper use of, or compliance with, the AR 406 policy or show that the ADOC's grievance process was unavailable. The PLRA requires proper exhaustion in accordance with the prison's established procedures (here, the AR 406 policy). *See Perttu v. Richards*, 605 U.S. 460, 465 (2025). The AR 406 policy mandates submission of an Inmate Grievance Form 406-A to the IGO and compliance with all procedural steps. AR 406 § V.Z.1. Plaintiff fails to address the ADOC Defendants' clear assertion and evidence that the ADOC records lack any inmate grievance form submitted by Plaintiff regarding the March 13, 2025 incident. (Doc. # 16-2 at 1.) Additionally, the AR 406 policy does not allow an inmate to bypass its procedures by directly contacting the I&I (now LESD). Any referral to the LESD for investigation occurs only after the inmate files a grievance, and that referral is initiated by the IGO. AR 406 § V.Z.1.b.–.c.

Second, Plaintiff's statement that he "filed his complaint with a Mr. R. White" is ambiguous, under the most favorable construction. (Doc. # 19 at 3.) It does not reasonably create a factual dispute about whether Plaintiff filed an inmate grievance in compliance with the AR 406 policy. The ADOC Defendants understand

Plaintiff's statement to refer to his filing of this 42 U.S.C. § 1983 complaint. (Doc. # 21 at 3.) The court also has considered whether the statement could be construed to refer to the submission of an Inmate Grievance Form 406-A to the IGO. Even under the most favorable reading, the statement does not show that Plaintiff properly initiated the AR 406 policy's administrative-remedy process, much less that he completed each required step of that process. Instead, the statement's context indicates it pertains to the immediately preceding reference to Plaintiff's § 1983 "complaint" filed in this court. (Doc. # 19 at 3.) But even if it does not, the statement is too conclusory to contradict the ADOC Defendants' motion, which clearly establishes that Plaintiff "has not submitted an inmate grievance for the incident he alleges occurred on March 13, 2025, at Easterling Correctional Facility." (Doc. # 16-2 at 1; *see also* Doc. # 16 at 5.) Based on the foregoing, the factual allegations in the ADOC Defendants' motion to dismiss and those in Plaintiff's response establish, without dispute, that (1) an administrative-remedy process was available and (2) Plaintiff failed to initiate that process prior to filing this lawsuit. Thus, dismissal of the complaint is required at *Turner*'s first step. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

However, to the extent there is a dispute of fact when Plaintiff's "version of the facts" is accepted "as true," dismissal of the complaint for failure to exhaust still is warranted under *Turner*'s second step. *McGuire-Mollica v. Fed. Bureau of*

13

*Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (quoting *Turner*, 541 F.3d at 1082). In other words, if the court were required to proceed to *Turner*'s second step based on Plaintiff's vague statement that he "filed his complaint with a Mr. R. White," the factual dispute would be resolved in favor of the ADOC Defendants. This resolution would be based on the vague nature of the statement (as explained) and the ADOC Defendants' clear showing that Plaintiff did not file an inmate grievance concerning the March 13, 2025 incident, as required by the AR 406 policy. In sum, under *Turner*'s two-step framework, the ADOC Defendants have shown that Plaintiff failed to properly exhaust the ADOC's available administrative remedies; therefore, dismissal without prejudice is required.[7]

## IV. CONCLUSION

Based on the foregoing, Plaintiff failed to properly exhaust the ADOC's available administrative remedies before filing this 42 U.S.C. § 1983 action; therefore, this action is premature until such time as he exhausts the ADOC's Administrative Regulation Number 406 (AR 406), which establishes an inmate grievance policy.

---

[7] In dismissing this action for Plaintiff's failure to exhaust administrative remedies, the court expresses no opinion as to the merits of Plaintiff's claims.

14

Accordingly, it is ORDERED that the ADOC Defendants' motion to dismiss (Doc. # 16) for failure to exhaust available administrative remedies is GRANTED and that this action is DISMISSED without prejudice.

Final judgment will be entered separately.

DONE this 12th day of February, 2026.

                                              /s/ W. Keith Watkins
                                   UNITED STATES DISTRICT JUDGE